# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TYERIE JOHNSON, | ) |
| Plaintiff, | ) |
| | ) No. 20 C 7222 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| CITY OF CHICAGO, BRADLEY ANDERSON, #15660, CORNELIUS BROWN #2235, YVETTE CARRANZA, #13435, ANTHONY BRUNO, #1123, STEVEN HOLDEN, #8149, SCOTT WESTMAN, #18472, and RUSSELL WILLINGHAM, #511, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Chicago Police officers Bradley Anderson, Cornelius Brown, Yvette Carranza, Anthony Bruno, Steven Holden, Scott Westman, and Russell Willingham (the "Officers") arrested Plaintiff Tyerie Johnson while executing a search warrant in a two-flat apartment building. Johnson was charged with possession of drugs but ultimately exonerated at trial. Johnson now brings this lawsuit against the Officers involved in the search and his arrest and the City of Chicago. Johnson brings claims pursuant to 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights, namely false arrest, fabrication of evidence, failure to intervene, and conspiracy to violate his constitutional rights, as well as a state law malicious prosecution claim. The City and the Officers have moved to dismiss Johnson's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] Because Johnson sufficiently pleaded the

---

[1] The City and the Officers treat Johnson's complaint as only raising an underlying false arrest claim. But Johnson's complaint and response also suggest that he brings claims for failure to intervene, fabrication of evidence, and conspiracy. Because the City and the Officers did not challenge these legal theories, however, the Court does not address them here.

absence of probable cause and because he sufficiently alleges a widespread practice or custom of covering up police misconduct and that this practice caused his injuries, Johnson's claims can proceed to discovery.

## BACKGROUND[2]

### I. The Incident

On February 8, 2019, the Officers searched two units in a two-flat apartment building on the 6800 block of South Dorchester Avenue in Chicago, Illinois. Officers Anderson and Westman obtained the warrant to search the second-floor unit; the warrant did not authorize their search of the first-floor unit. The warrant identified its target as a drug dealer named "Lord" and described him as "a Male Black, 35 to 40 years old, 6'2" to 6'3" 300 lbs, Long Black Dreadlocks, Brown Eyes, Medium Complexion." Doc. 1 ¶ 8. Officers Holden and Carranza arrested a man during the search who matched the description of the person named "Lord." But Officers Anderson and Westman also arrested Johnson during the search despite the fact that, at that time, Johnson was 5'6", weighed about 200 pounds, and did not have dreadlocks. At the time of Johnson's arrest, the Officers had not received information from any source that Johnson had committed an offense or was otherwise subject to arrest. Additionally, they did not observe Johnson commit any offense.

---

[2] The Court takes the facts in the background section from Johnson's complaint and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court will not take judicial notice of the transcript of the proceedings of Johnson's criminal prosecution at this early stage because the testimony at issue is subject to dispute, and considering the content of the transcript would prevent Johnson from probing the truthfulness of those statements and require the Court to make credibility determinations about the events in question. *See Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018) ("Although a court may generally take judicial notice of public records, under Federal Rule of Evidence 201, a court may judicially notice only a fact that is not subject to reasonable dispute."). The Court, however, will take judicial notice of the certified statement of conviction/disposition. *See Adebiyi v. Felgenhauer*, No. 08 C 6837, 2010 WL 1644255, at *2 (N.D. Ill. Apr. 20, 2010) (taking judicial notice of certified statement of conviction).

Following Johnson's arrest, Officers Anderson, Carranza, Holden, and Westman prepared official police reports that asserted that Johnson had been the target of the search warrant. Officers Bruno, Brown, and Willingham, who supervised the search, knew the other officers were making false statements in their police reports but did not intervene to correct the information. Subsequently, one or both of Officers Anderson and Westman provided the basis for the charges of possession of a controlled substance with intent to deliver and possession of cannabis with intent to deliver to prosecutors. As a result, Johnson was detained and prosecuted for possession of the drugs found during the search. While awaiting trial, Johnson was on electronic monitoring and not allowed to leave his home except for court appearances. A judge ultimately exonerated Johnson on December 19, 2019 after a bench trial.

## II.     The City's Code of Silence

The City is aware of and, in fact, encourages a "code of silence" among its police officers. The United States Department of Justice ("DOJ") in its official report, "Investigation of the Chicago Police Department," published on January 13, 2017, concluded that "[o]ne way to cover up police misconduct is when officers affirmatively lie about it or intentionally omit material facts," and that "[t]he Mayor has acknowledged that a 'code of silence' exists within CPD, and his opinion is shared by current officers and former high-level CPD officials." Doc. 1 ¶ 25. The report further noted that, during an interview made public in December 2016, "the President of the police officer's union admitted to such a code of silence within CPD, saying 'there's a code of silence everywhere, everybody has it . . . so why would the [Chicago Police] be any different.'" *Id*. The DOJ thereby concluded that "a code of silence exists, and officers and community members know it." *Id*. In a public setting in October 2020, Chicago's Police Superintendent acknowledged that the code of silence continues to exist.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.      False Arrest Claim Against the Officers**

The Officers first argue that Johnson has failed to state a claim for false arrest because the complaint does not include any facts demonstrating the absence of probable cause. In the alternative, the Officers contend that qualified immunity protects them from Johnson's claim. The Court addresses each of these arguments in turn.

    **A.      Probable Cause**

To assert a false arrest claim, Johnson must show that the Officers did not have probable cause to arrest him. *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). "[P]robable cause to

4

believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007). This is a "purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013).

The Officers contend that Johnson's allegation that he was not the target of the search warrant does not sufficiently establish the absence of probable cause to pursue criminal charges. But that is not all that Johnson alleges. He also claims that the Officers lacked probable cause to arrest him because he was not named on the operative search warrant, he did not fit the description of the individual named in the warrant, and the Officers did not see him commit any crime that would allow them to arrest him without a warrant. At this stage, the Court must take these allegations as true. *Romando v. City of Naperville*, No. 20 C 2701, 2021 WL 1853304, at *3 (N.D. Ill. May 10, 2021). Taken together, these allegations plausibly suggest that Johnson was merely an innocent bystander who happened to be at the wrong place at the wrong time and do not provide any basis for concluding that he had any connection to the drugs found during the search for which he was prosecuted. Although the Officers dispute Johnson's allegations, "the highly fact-based nature of these arguments is more amenable to resolution at a later stage after discovery has allowed for a clearer picture of the events." *Id.*; *see Neita*, 830 F.3d at 497 ("Neita has adequately pleaded that the defendants lacked probable cause to arrest him for either offense. The operative version of the complaint alleges that Neita arrived at Animal Control with two dogs: one was physically healthy and well nourished but overly aggressive, and one was sick from whelping puppies. It further alleges that Neita had taken the second dog to a veterinarian but ultimately had to turn it over to Animal Control to protect the puppies' health.").

B.     **Qualified Immunity**

Likewise, at this stage the Court cannot find that qualified immunity protects the Officers. *See Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir.1994) ("A defendant may raise a qualified immunity defense in a motion to dismiss, but at this stage of the proceedings the only facts before us are those alleged in the complaint, which we are obliged to accept as true."). Qualified immunity shields officers from civil liability stemming from discretionary functions so long as their conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, qualified immunity protects the Officers from the unlawful arrest claim only if a reasonable officer could have believed that probable cause existed to arrest Johnson in light of the information the Officers possessed at the time. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Cibulka v. City of Madison*, 992 F.3d 633, 638 (7th Cir. 2021).

To survive a qualified immunity defense at this stage, the complaint must plausibly allege that the Officers violated Johnson's clearly established rights by arresting him without probable cause. As discussed above, taking the facts alleged in the complaint as true and drawing all inferences in Johnson's favor, the Court finds that the complaint has satisfied this standard. The complaint plausibly alleges that the Officers did not have probable cause to arrest him, and nothing in the complaint suggests that the Officers even had an arguable basis to do so. *See McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012) ("In the context of a wrongful arrest, the question turns on whether the arresting officer had "arguable probable cause." (quoting *Jones v. Clark*, 630 F.3d 677, 684 (7th Cir.2011))). And no one disputes that Johnson had a clearly established right to be free from arrest without probable cause. *Fleming v. Livingston Cnty.*, 674 F.3d 874, 880 (2012). The Court may reasonably infer that a reasonable person in the Officers'

6

position would have known that they needed probable cause to make an arrest and that the Officers should have known that they lacked probable cause to arrest Johnson. The Court thereby allows Johnson's false arrest claim to proceed to discovery. *See Ewell v. Toney*, 853 F.3d 911, 920 (7th Cir. 2017) ("[Q]ualified immunity is sometimes a factual question better reserved for summary judgment.").

## II. Malicious Prosecution Claim Against the City

Under Illinois law, a malicious prosecution claim requires Johnson to allege: "(1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (quoting *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996)). The City argues that Johnson has failed to allege sufficient facts to support the first, third, and fourth elements of this claim.

With respect to the first element, the City argues that Johnson has not sufficiently alleged that the Officers instituted or continued the proceedings against him. Typically, "the State's Attorney, not the police, prosecutes a criminal action." *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996). But liability can extend to any individual, including police officers, if he or she played a significant role in causing the prosecution. *Serrano v. Guevara*, No. 17 CV 2869, 2020 WL 3000284, at *20 (N.D. Ill. June 4, 2020). "Officers play a significant role when their conduct was so active and positive to amount to advice and co-operation or when they improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution." *Id.* (citations omitted). Indeed, "[i]t is

7

conceivable that a wrongful arrest could be the first step towards a malicious prosecution. However, the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Reed*, 77 F.3d at 1053.

In Johnson's case, he asserts that the Officers falsely stated in official police reports that he was the target of the search, and that, because of this false statement, he was wrongfully prosecuted for possession of drugs allegedly found during the search. Further, Johnson alleges that one or more of the Officers communicated the false charge to prosecutors. Construing this claim liberally, Johnson has met his burden of alleging that the Officers "made [] knowing misstatements to the prosecutor or acted in any manner that was improper besides arresting him without probable cause." *Bullock v. Vill. of Calumet Park*, No. 00 C 6364, 2001 WL 845479, at *4 (N.D. Ill. July 26, 2001).

The City next argues that Johnson does not sufficiently plead the absence of probable cause. For purposes of a malicious prosecution claim, probable cause exists where the facts "would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013) (citation omitted). The Court considers whether probable cause for the prosecution existed as of the filing of the charging document, not at the time of arrest. *Holland*, 643 F.3d at 254. Here, the City contends that Johnson has not put forth any evidence that the Officers did not have probable cause. But like his claim for false arrest against the Officers, here too Johnson sufficiently alleges that "the [Officers] lacked probable cause— and contrary to what the [City] claims, [Johnson] has no obligation at this stage of the litigation to put forth evidence rather than adequate allegations on that issue." *Engel v. Buchan*, 791 F.

8

Supp. 2d 604, 611 (N.D. Ill. 2011). Thus, whether the Officers had probable cause is something that will be proved or disproved based on the record as the parties develop it in this case.

Finally, the City contends that Johnson has failed to allege that the Officers acted with malice, arguing that they could not have done so because they had probable cause to arrest him. "'Malice' in the context of malicious prosecution means that the officer who initiated the prosecution had 'any motive other than that of bringing a guilty party to justice.'" *Williams*, 733 F.3d at 759–60 (quoting *Aleman v. Vill. of Hanover Park*, 662 F.3d 897, 907 (7th Cir. 2011)). Further, "malice can be inferred when a defendant lacks probable cause and the circumstances indicate a lack of good faith." *Holland*, 643 F.3d at 255. As discussed above, because Johnson has sufficiently alleged the absence of probable cause, the Court may infer malice at this stage. *See Baker v. City of Chicago*, 483 F. Supp. 3d 543, 556 (N.D. Ill. 2020) ("The Court may reasonably infer malice from the allegations regarding Defendant Officers' statements and actions . . . . These allegations are sufficient at the pleading stage to sustain state law claims for malicious prosecution."). Therefore, the Court allows Johnson's malicious prosecution claim to proceed to discovery.

### III. *Monell* Claim Against the City

Finally, the City argues that Johnson cannot prevail on a policy or practice claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). To state a *Monell* claim, Johnson must allege (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). The policy or

9

practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (internal quotation marks omitted) (citation omitted). At this procedural posture, however, the Court need only determine whether Johnson has sufficiently alleged his *Monell* claim against the City under the dictates of *Iqbal* and *Twombly*. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (federal courts may not apply a "heightened pleading standard" to *Monell* claims).

First, the City argues that the *Monell* claim fails for lack of an underlying constitutional violation. But the Court has determined that Johnson has sufficiently pleaded his false arrest claim against the Officers, so this argument fails. Next, the City contends that Johnson has not adequately alleged a widespread pattern or practice. In response, Johnson asserts that, although he need not provide additional examples of other individuals harmed by the alleged practice at the motion to dismiss stage, *see id.*, the DOJ's conclusions and the Chicago Police Superintendent's acknowledgement that a code of silence exists in the Chicago Police Department support the conclusion that the City has a widespread policy or practice of covering up misconduct. Johnson's allegations thereby "permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017); *see Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) (finding that the plaintiff's use of the Department of Justice Report to highlight CPD practices relevant to his claims created a "reasonable inference that he is not alone in suffering constitutional injuries resulting from this alleged practice or custom").

The City next argues that Johnson has failed to allege that the code of silence was the moving force behind his unlawful arrest because he includes only conclusory allegations to this effect. Johnson's complaint alleges that "[t]he City's above-described 'code of silence' was a

10

proximate cause for the actions of the officer defendants to concoct a false story and fabricate evidence that was used to deprive plaintiff of his liberty." Doc. 1 ¶ 28. The City cites to *Smith v. City of Chicago*, No. 18 C 4918, 2019 WL 95164, at *7 (N.D. Ill. Jan. 3, 2019), and *Jordan v. City of Chicago*, No. 20-CV-4012, 2021 WL 1962385, at *5 (N.D. Ill. May 17, 2021), as instructive, cases in which courts determined that almost the same allegations that Johnson includes in his complaint failed to plausibly allege the required causation between the code of silence and the plaintiffs' constitutional injuries. In *Smith*, the "code of silence" allegations were both "brief and circular: the 'code of silence' caused Officers Mitchell and Otero to do what they did because they acted pursuant to the 'code of silence.'" 2019 WL 95164, at *7. In *Jordan*, the court determined that the plaintiff's "[t]hreadbare recitals of causation supported by mere conclusory statements, do not suffice to plead a plausible claim." 2021 WL 1962385, at *5 (first alteration in original) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

In his response, Johnson seeks to expand on his causation allegation to address the court's conclusions in *Smith* and *Jordan*. He further alleges that, by maintaining its code of silence, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be scrutinized, thereby emboldening the Officers to fabricate evidence and cover up a false arrest in this case. He goes on to assert that "[t]he code of silence provided defendants Anderson, Brown, Carranza, Bruno, Holden, Westman, and Willingham with good reason to believe that they would effectively be immune from any sanction for their wrongdoing." Doc. 38 at 14. Though the City argues that the Court should not consider these additional allegations that Johnson has included in his response, the Court finds they merely expand on the allegations in Johnson's complaint and so the Court can consider them in connection with deciding the motion to dismiss, particularly where the City had a chance

11

to respond to them in its reply. Indeed, "'[a] plaintiff need not put all of the essential facts in the complaint;' he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." *Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (quoting *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir.1992)); *see Blake v. Regan*, No. 20 CV 4065, 2021 WL 698480, at *2 n.4 (N.D. Ill. Feb. 23, 2021) ("A plaintiff's allegations in the complaint provide the basis to decide whether he has a plausible claim for relief, although a plaintiff may refer to additional facts that are consistent with the complaint to illustrate what the plaintiff expects to prove."). With the addition of the supplementary allegations, the Court finds that Johnson has sufficiently alleged that the code of silence was the moving force behind the constitutional violations he suffered. *See Spearman v. Elizondo*, 230 F. Supp. 3d 888, 894–896 (N.D. Ill. 2016); *Peterson v. City of Chicago*, No. 14-cv-9881, 2015 WL 13882814, at *6 (N.D. Ill. June 23, 2015). Johnson has therefore plausibly alleged his *Monell* claim against the City.

## CONCLUSION

For the foregoing reasons, the Court denies the City and the Officers' motions to dismiss [35, 37].

Dated: September 28, 2021

SARA L. ELLIS
United States District Judge